[No. 15894. Department One. September 14, 1920.]

FREMONT STATE BANK, *by Louis H. Moore, State Bank Examiner, Respondent,* v. S. H. VINCENT, *Appellant.*[1]

BANKS AND BANKING (1)—INSOLVENCY—STOCKHOLDER'S SUPER-ADDED LIABILITY—SALE OR TRANSFER OF STOCK. Under Const., art. 12, § 4, making stockholders of banks liable for debts that "accrued while they remain such stockholders", to the extent of the par value of the stock, a sale and transfer of stock in good faith prior to insolvency of the bank does not relieve the stockholder from obligations existing at the time of his ownership of the stock.

SAME (2)—EXTENT OF LIABILITY—REISSUANCE OF CERTIFICATES OF DEPOSIT—CREATION OF NEW DEBT. The superadded liability imposed upon stockholders by Const., art. 12, § 4, is not original but secondary, and in substance the liability of a surety, and a former owner of stock is not liable for an obligation incurred by a bank through the issuance of new certificates of deposit, after taking up and paying interest on the former certificates, long after he had ceased to be a stockholder, since the issuance of the new certificates was the creation of a new obligation.

SAME (1) — EXTENT OF LIABILITY — ASSESSMENT OF STOCK. A former owner of sixty of the five hundred shares constituting the capital stock of an insolvent bank is liable under the superadded liability imposed by Const., art. 12, § 4, equally and ratably, for 60/500 of the amount of obligations incurred while he was a stockholder of the bank.

INTEREST (25)—SUPERADDED LIABILITY OF STOCKHOLDER. Where demand was made upon a stockholder of an insolvent bank for payment of his superadded liability, he is liable for interest at the legal rate of six per cent from the time of such demand, upon the amount of his proportional liability found to be due.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered February 25, 1920, upon findings in favor of the plaintiff, in an action to enforce the superadded liability of a stockholder of an insolvent bank, tried to the court. Reversed.

[1]Reported in 192 Pac. 975.

*Charles E. Congleton,* for appellant.

*D. E. Twitchell,* for respondent.

Parker, J.—The plaintiff, bank examiner, commenced this action in the superior court for King county, seeking recovery from the defendant, Vincent, upon his constitutional superadded liability as a stockholder of the plaintiff bank, for the benefit of its creditors. Trial upon the merits in the superior court, sitting without a jury, resulted in findings and judgment in favor of the bank examiner, from which the defendant has appealed to this court.

The controlling facts, as we view them, are not in dispute, and may be summarized as follows: The plaintiff bank was at all times in question, up until going into the hands of the state bank examiner for the purpose of liquidation because of its insolvency, a duly organized banking corporation under the laws of this state, carrying on its business in the city of Seattle. The capital stock of the bank has at all times consisted of 500 shares of the par value of $100 each. Appellant, Vincent, was one of the original subscribers for the shares of stock of the bank, thereby becoming the owner of sixty shares thereof. On January 31, 1917, the bank became insolvent and passed into the hands of the state bank examiner for the purpose of liquidation. The bank examiner determined that the liabilities of the bank exceeded its assets in an amount such as to call for the enforcement of the full constitutional superadded liability of its stockholders, notified and made demand accordingly upon the stockholders, and also upon appellant as one of the stockholders. Appellant declining to pay as demanded of him, upon the ground that he was not a stockholder when the bank became insolvent, and therefore not liable as a stockholder for any of the bank's obliga-

tions, the examiner commenced this action, which re-. sulted in a judgment against appellant for the sum of $6,000, and interest, being the full constitutional superadded liability upon the owner or owners of the sixty shares of stock here in question. On June 14, 1916, which, it will be noticed, was over seven months before the bank passed into the hands of the bank examiner, and, as we think appears, at a time when the bank was a sound and going concern, appellant, in good faith, sold and transferred his sixty shares of stock to one McCutchin, which transfer was on that day duly evidenced upon the books of the bank by proper record thereof. The liabilities of the bank were found to be approximately $230,000, while its assets were approximately $130,000. There are of the liabilities $26,164.02 of savings accounts, and $645.55 of checking accounts, which were incurred by the bank before appellant disposed of his shares of stock. There were also of the liabilities $8,275 of certificates of deposit, which were renewals of certificates of deposit of an equal total amount which had been issued before appellant disposed of his shares of stock, which original certificates of deposit were surrendered and interest paid thereon and new certificates of deposit issued in an equal amount to the same depositors some time after appellant disposed of his shares of stock. In the liquidation of the bank's affairs, the examiner has paid, as found by the trial court, to the "general creditors of the bank," dividends aggregating forty-five per cent. The record, we think, shows, indeed counsel seems to concede, that the affairs of the bank are about wound up; that there is in the hands of the examiner a sum approximately sufficient to pay the expense of bringing the trust to a close, but not sufficient to pay any further dividends to creditors, and that there will

be no further dividends paid, except from such funds as may be ultimately recovered from appellant in this action.

It is first contended in appellant's behalf that he is not liable in any amount upon his constitutional super-added liability with reference to the sixty shares of stock, because he had, in good faith, sold and transferred the shares of stock and caused such transfer to be duly made of record on the books of the bank long before it became insolvent. Counsel invoke the rule as announced by the Federal courts under the national banking law, in substance, that a sale and transfer of shares of stock, made in good faith and evidenced as the law requires, relieves the transferrer of his superadded liability, both as to existing and future obligations of the bank; and that such transfer not only gives to the transferee title to the stock, but also imposes upon him the superadded liability, both as to existing and future obligations of the bank, and thereby entirely relieves the transferrer from such liability. This view of the law is rested upon the language of § 5151, of the U. S. Rev. Stats., reading as follows:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

This is the view of the law adopted in many states where superadded liability is imposed upon bank stockholders by constitutional or statutory language of the same general import. The language of our constitution, however, imposing superadded liability upon bank stockholders is much farther reaching, and seems to leave no escape from the conclusion that stockholders

do not relieve themselves from such liabilities as to existing obligations of the bank by sale and transfer of their shares of stock. In Const., art. XII, § 11, we read:

". . . Each stockholder of any banking or insurance corporation or joint stock association shall be individually and personally liable equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation or association *accruing while they remain such stockholders,* to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares."

We have italicized the words to be particularly noticed, and which are not found, either in form or substance, in the written law, either constitutional or statutory, of the National Government or the states with reference to which the rule invoked by counsel for appellant obtains. The decision of this court in *Shuey v. Holmes,* 21 Wash. 223, 57 Pac. 818, seems to be decisive against the contention here made upon this question in appellant's behalf, wherein it was squarely held that a transferee of shares of stock in a state bank did not have imposed upon her the superadded liability mentioned in the constitution as to an obligation of the bank created and incurred before she became a stockholder by virtue of such transfer. Affirming the decision of the trial court so holding, Judge Gordon, speaking for the court, said:

"The judgment of the lower court was right, for the simple reason that it does not appear from the statement or from anything contained in the record, neither was it alleged in the complaint, that the whole or any part of the indebtedness of the bank was incurred or created at any time while the respondent was a stockholder of the bank. It is evident that the theory upon which the receiver proceeded was that all

stockholders of the bank at the date when its insolvency was adjudged and a receiver appointed, viz., January 7, 1897, were liable, without regard to whether they were such stockholders at the time when the indebtedness arose. This was a mistaken theory, and nothing is needed to demonstrate the mistake, other than the plain language of the constitutional provision just quoted. This superadded liability of the stockholder which exists by virtue of the statute and constitution is personal, and does not follow the stock. The obligation rests on the stockholder, not on the stock.''

It seems to us to necessarily follow that the prior owner of stock, owning it when the obligation of the bank was incurred, must respond to the superadded liability and so contribute to the satisfaction of such obligation of the bank. The only decision coming to our notice which can be said to be exactly in point upon this question is that of the supreme court of West Virginia, in *Dunn v. Bank of Union,* 74 W. Va. 594, 82 S. E. 758, L. R. A. 1915 B 168, in which case this conclusion was reached, having under consideration a superadded liability of bank stockholders under a similar constitutional provision; that is, one rendering the stockholders liable ''to an amount equal to their respective shares so held, for all liabilities *accruing while they were such stockholders.''* We feel constrained to hold that appellant did not, by the sale and transfer of his stock, escape the superadded liability as prescribed by our constitution as to obligations of the bank incurred while he was a stockholder.

It does not follow from what we have said thus far that appellant is liable to the extent adjudged by the trial court. To determine the extent of his liability in this case it manifestly becomes necessary for us to inquire as to the amount of the present obligations of the bank which were created and accrued while he was a stockholder. We have seen that $8,275 of certificates

of deposit, held by the court to have accrued while appellant was a stockholder, was, as a matter of fact, issued some time after he ceased to be a stockholder. The argument made in behalf of the bank examiner, and the theory of the trial court, seems to be that the issuance of the new certificates of deposit, after taking up and paying interest upon the former certificates, was but a continuation of the original debt evidenced by the original certificates of deposit. We do not think this theory is sound. It is true that the *Dunn* decision in the West Virginia case, above noticed, does seem to lend support to this contention made on behalf of the bank examiner; but a critical reading of that decision renders it plain that that court proceeded upon the theory that the superadded liability was an original liability on the part of a stockholder as principal. But this court, in the early case of *Wilson v. Book,* 13 Wash. 676, 43 Pac. 939, adopted the view, which seems to have abundant support in the authorities, that the stockholder's superadded liability is not original but secondary, and is, in substance, the liability of a surety. This view, we think, is quite in harmony with our conclusion here reached, that when the original certificates of deposit were taken up, interest paid thereon, and new certificates issued, there was created a new loan from the depositor to the bank, and a new obligation at a time long after appellant had ceased to be a stockholder in the bank, and after such fact was duly evidenced by record of the transfer of his stock upon the books of the bank. The decision of the supreme court of Minnesota in *Seymour v. Bank of Minnesota,* 79 Minn. 211, 81 N. W. 1059, lends strong support to this conclusion. We conclude that appellant's superadded liability did not render him liable to contribute any-

thing towards the payment of the bank's debt evidenced by these certificates of deposit.

We have remaining of the bank's liabilities the savings accounts amounting to $26,164.02, and its checking accounts amounting to $645.55, constituting obligations incurred while appellant was a stockholder of the bank. We cannot escape the conclusion that he is liable to contribute towards the payment of these obligations, or rather towards the unpaid portion of them, "equally and ratably" with the other stockholders of the bank. We have seen that the bank examiner has already paid forty-five per cent in dividends to the "general creditors of the bank." This we interpret as meaning that forty-five per cent of these savings and check deposit claims have been paid. The total amount of these claims was $26,809.57. Deducting forty-five per cent of dividends paid upon them, which is $12,064.30, leaves $14,745.27 remaining unpaid. The appellant, being the owner of 60/500 of the entire capital stock of the bank, is liable to pay a like proportion of this balance due upon these savings and checking deposit claims, which is $1,769.43. The demand upon the stockholders, including appellant, for payment of their superadded liability was made by the bank examiner on May 15, 1917, hence appellant would be liable for interest at the legal rate, to wit, six per cent upon that sum from that date. This is not questioning or revising in any way the one hundred per cent assessment made by the bank examiner, calling for the payment of the full superadded liability by the stockholders; and is not in conflict with our decision in *Hanson v. Soderberg,* 105 Wash. 255, 177 Pac. 827, wherein we held that the determination of the amount, or rather percentage of the assessment, up to the one hundred per cent limit, was within the discretion of the bank examiner. It is but

the charging appellant with the portion of that assessment which he as a stockholder is liable to pay. Nothing could seem plainer than that the owner or owners, whether one or many, during different periods of ownership of these sixty shares of stock, shall not be required to pay more than the total of one hundred per cent, or $6,000, as the total superadded liability of all of such owners of that stock.

The judgment of the trial court is reversed, and the cause remanded with directions to enter a judgment in favor of the bank examiner and against appellant for the sum of $1,769.43, with interest thereon at six per cent from May 15, 1917. Appellant will recover his costs upon this appeal.

HOLCOMB, C. J., MITCHELL, and TOLMAN, JJ., concur.