[No. 16528-3-I.   Division One.   March 18, 1987.]

WASHINGTON LIFE & DISABILITY INSURANCE GUARANTY ASSOCIATION, ET AL, *Respondents*, v. MARIE M. ADAMS, ET AL, *Defendants*, ROBERT F. ADAMS, ET AL, *Appellants*.

*Charles J. Herrmann, Herrmann & Levenson,* and *Jeffrey D. Gross,* for appellants.

*Basil L. Badley* and *Barbara E. Reinsma,* for respondent Washington Life and Disability Insurance Guaranty Association.

*Laurence E. Mason* and *Julin, Fosso, Sage, McBride & Mason,* for respondent Marquardt.

REVELLE, J.*—Some of the individual shareholders of the now defunct Protective American Life Insurance Company (PAL) appeal an order granting Richard Marquardt, the Washington State Insurance Commissioner and the Washington Life and Disability Insurance Guaranty Association (WLDIGA) summary judgment against all the shareholders of PAL for superadded liability and damages upon its liquidation.

---

*This appeal was heard by a Supreme Court Justice, a Superior Court Judge, and a retired Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

## FACTS

PAL was a stock company organized and existing under the laws of the State of Washington. On November 30, 1979, PAL was adjudicated insolvent and ordered liquidated. On that date there were 17,464 shares of stock outstanding, owned by 551 shareholders. The stock had a par value of $17.50 per share. The resulting paid in capital amounted to $305,620.

The Commissioner, as the court appointed receiver for PAL, and WLDIGA brought an action seeking to impose superadded personal liability on the shareholders in an amount equal to the par value of their shares. This liability was based on Const. art. 12, § 11 (amend. 16).[1] The objective of superadded liability is to create a fund to protect creditors. *Bennett v. Thorne,* 36 Wash. 253, 78 P. 936 (1904).

In June 1983, the Commissioner and WLDIGA brought motions for summary judgment on the issues of liability and damages. The trial court granted partial summary judgment in favor of the Commissioner on the issue of liability, reserving judgment on damages and on whether WLDIGA was a proper party. The court denied a motion

---

[1] "§ 11 Stockholder Liability. No corporation, association, or individual shall issue or put in circulation as money anything but the lawful money of the United States. Each stockholder of any banking or insurance corporation or joint stock association shall be individually and personally liable equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation or association accruing while they remain such stockholders, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares.

"The legislature may provide that stockholders of banking corporations organized under the laws of this state which shall provide and furnish, either through membership in the Federal Deposit Insurance Corporation, or through membership in any other instrumentality of the government of the United States, insurance or security for the payment of the debts and obligations of such banking corporation equivalent to that required by the laws of the United States to be furnished and provided by national banking associations, shall be relieved from liability for the debts and obligations of such banking corporation to the same extent that stockholders of national banking associations are relieved from liability for the debts and obligations of such national banking associations under the laws of the United States."

for reconsideration.

In March 1985, WLDIGA filed a motion for summary judgment on liability and damages while the Commissioner filed a motion for summary judgment on the question of damages alone. In April 1985, these motions were granted. The effect of these summary judgments was to impose personal liability on the individual shareholders and damages in an amount equal to the par value of stock, plus interest, from the date PAL was liquidated.

Appellants' contentions present four questions to the court. In brief these are: whether RCW 30.12.160 and therefore Const. art. 12, § 11 as amended which imposes superadded liability, violates the equal protection clause; whether WLDIGA is a proper party to this action; whether proper notice was given to PAL and its shareholders concerning the deficiency and the impairment of stock; and when liability attaches to the individual shareholders.

## STANDARD OF REVIEW

When reviewing summary judgments the appellate court "engages in the same inquiry as the trial court." *Hartley v. State,* 103 Wn.2d 768, 698 P.2d 77 (1985). In determining whether a genuine issue exists as to any material fact, "[t]he court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party." *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

The burden is on the moving party to prove there is no genuine issue as to a material fact that could influence the outcome of the trial. *Hartley,* at 774.

## DISPOSITION

The shareholders contend they were denied equal protection of the law because bank shareholders have been statutorily relieved[2] of superadded liability[3] and insurance

[2] RCW 30.12.160.

[3] See the second paragraph of Const. art. 12, § 11 (footnote 1), which was added by amendment 16 in 1940.

shareholders have not. The shareholders contend there is no rational basis for distinguishing between bank and insurance shareholders, because the creditors of both banks and insurance companies are protected by governmental guaranty associations.[4]

However, the shareholders incorrectly assert that insurance company and bank shareholders are of the same class. Banks and insurance companies are different entities created for different purposes. Under Const. art. 12, § 11 (amend. 16) all insurance companies and their shareholders are treated alike, along with those bank shareholders whose banks are not protected by a *federally* backed insurance guaranty association. What shareholders contend here is that RCW 30.12.160, terminating superadded liability, should include shareholders of insurance companies as well as banks, and because the statute does not they were denied equal protection.[5]

■■ Even if we were to assume all bank and insurance company shareholders are of a like class, there is a rational basis for the differing treatment. Because banking corporations that are members of the Federal Deposit Insurance Corporation or other federal instrumentalities are protected by federal funds, there is a reason to treat them differently than those insurance companies and banks which are protected only by an instrumentality of the State. Whether any legal basis exists for a particular legislative classifica-

---

[4]Creditors of insurance companies doing business in Washington State are protected by WLDIGA. Creditors of national banks are protected by the Federal Deposit Insurance Corporation.

[5]However, shareholders are in effect challenging the constitutionality of Const. art. 12, § 11 (amend. 16) which allowed the Legislature to relieve those bank and trust company shareholders who are federally protected from superadded liability, while leaving insurance company and non-federally protected bank shareholders liable. In order to grant the relief prayed for by PAL's shareholders we must find Const. art. 12, § 11, as amended, in conflict with the federal constitution which would in turn require that the Washington provision yield to the provisions of the United States Constitution. *Reynolds v. Sims*, 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362, *reh'g denied*, 379 U.S. 870 (1964); U.S. Const. art. 6, cl. 2. We find no such conflict and as such Const. art. 12, § 11 as amended stands.

tion is primarily one for legislative determination. The courts will not interfere unless such classification is manifestly unreasonable or arbitrary, or unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective. *Paulson v. County of Pierce,* 99 Wn.2d 645, 664 P.2d 1202, *appeal dismissed,* 464 U.S. 957 (1983).

We find the statute to be reasonable as it works to protect creditors of insurance companies doing business in the state. Therefore there is no violation of equal protection.

■ Next, the shareholders contend WLDIGA has no standing to bring this action as it is just one of many creditors seeking funds from PAL. They further contend WLDIGA has no statutory or constitutional authority to seek enforcement and is therefore an improper party. The shareholders rely on two cases, *Wilson v. Book,* 13 Wash. 676, 43 P. 939 (1896) and *Mitchell v. Jordan,* 36 Wash. 645, 79 P. 311 (1905), to show that WLDIGA as a creditor cannot, on its own, be a party to maintain an action against shareholders for superadded liability. However, the shareholders fail to discuss the effects of the statutory establishment of WLDIGA, other than the placement of WLDIGA as a creditor of the defunct corporation. Most notably, RCW 48.32A.060(5) subrogates WLDIGA to the rights of any person entitled to receive benefits from PAL. It states:

> In addition to any other rights of the association acquired by assignment or otherwise, the association shall be subrogated to the rights of any person entitled to receive benefits under this chapter against the liquidating insurer, or the receiver, rehabilitator, liquidator, or conservator, as the case may be, under the policy or contract with respect to which a payment is made or guaranteed, or obligation assumed by the association pursuant to this section, . . .

WLDIGA has the power to "receive, own, and administer any assets acquired . . .", RCW 48.32A.060(1), and also has the responsibility to marshal assets of the insolvent insurer from which the receiver (Commissioner) has to apply to the court for disbursement. RCW 48.31.185(1). Thus, the stat-

utes serve to supersede *Wilson* and *Mitchell* with respect to the authority granted to WLDIGA.

The shareholders next contend the Commissioner should have been estopped from proceeding with this action as he failed to give notice to the insurer that its capital stock was impaired, and failed to let the shareholders have an opportunity to make good the deficiency as required by statute.

RCW 48.08.050(1) provides:

> If the capital stock of a domestic stock insurer becomes impaired, the commissioner shall at once determine the amount of the deficiency and serve notice *upon the insurer* to require its stockholders to make good the deficiency within ninety days after service of such notice.

(Italics ours.)

The record does not support these contentions. In paragraph 14 of the initial PAL receivership pleading the Commissioner set out the following:

> Petitioner by letter dated July 8, 1977, a copy of which is attached hereto and made a part hereof by reference, ordered Respondent to make good the impairment of capital plus replenish its surplus within 90 days. Respondent was ordered to make up a total of $902,938.28.

In paragraph 8 of its response to the petition, PAL admits the allegations of paragraph 14 of the Commissioner's petition.

The shareholders also claim that each of them individually should have been given direct notice by the Commissioner. This, too, is incorrect. An "insurer" means "every person engaged in the business of making contracts of insurance . . .", RCW 48.01.050, and does not include an insurer's individual shareholders. Accordingly, the Commissioner was not required to notify each individual PAL shareholder that the company's capital stock was impaired. The only requirement imposed on the Commissioner was to notify the insurer.

The shareholders further claim they were impermissibly barred from making up the deficit by entry of a stipulation and order which prohibited the solicitation of shareholders

for the funds needed to do so. The initial letter of July 8, 1977, from the Commissioner to PAL gave PAL and its shareholders 90 days to make up any deficiency. The order preventing solicitation of the shareholders for the deficiency was entered on September 5, 1978, over 1 year after the demand was made. This certainly was more than the 90 days in which shareholders could have made up the deficiency as required by RCW 48.08.050(1). The initial amount of the deficiency was $902,938.28. The deficiency was approximately three times the amount of the shareholders' superadded liability. The Insurance Commissioner did not believe PAL could correct its capital deficiency and did not want to require the shareholders to contribute more than their superadded liability. Therefore, the stipulation was entered into to prevent further depletion of the shareholders' money and was therefore to the shareholders' benefit.

Finally, shareholders claim that the Commissioner and WLDIGA failed to prove appellant shareholders were the shareholders at the time the order of liquidation was entered. The shareholders contend that in order to be liable the debts had to have accrued while each individual shareholder was in fact a shareholder. The shareholders argue this was not proved by the Commissioner or WLDIGA.

Superadded liability is imposed against those persons who are record shareholders on the date of the adjudication of insolvency. *Duke v. Johnson,* 123 Wash. 43, 211 P. 710 (1923). Const. art. 12, § 11 (amend. 16) states that superadded liability is imposed "for all contracts, debts, and engagements of such corporation or association accruing while they remain such stockholders".

Originally, the "accruing while they remain stockholders" language caused confusion. *Shuey v. Holmes,* 21 Wash. 223, 57 P. 818 (1899), which concerned the insolvency of a bank, interpreted this language to mean that a

shareholder who was not a shareholder at the time of the creation of the debt could not be subjected to the statutory superadded liability. *Shuey* was overruled in *Duke v. Johnson,* 123 Wash. 43, 211 P. 710 (1923), which held that the effect of the *Shuey* decision would be to create liability at differing and various times during the continuation of the bank as an ongoing concern, and would result in relieving from payment many of those who had stock at the time of the bank's failure. *Duke* provides that "each stockholder" shall be liable for all debts accruing while each remains a stockholder to the extent of the par value of their shares in addition to the amount invested therein, and refers to those who are stockholders at the time of the insolvency of the corporation. Thus, the obligation of an ongoing concern accrues for purposes of superadded liability not when the debt is incurred by the corporation, but rather when a formal demand or proceeding matures the obligation. The *Duke* court concluded it was the failure of the bank that triggered liability because the debts became due at that time.

Here, the adjudication of insolvency is the formal proceeding which triggers the liability by operation of law. Those who are shareholders at that time are subject to the superadded provision of the constitution. Records in the case at bar establish that these shareholders had all acquired their shares while the company was solvent and held their shares before and/or at the time the debts accrued rendering PAL insolvent. They are therefore liable under the superadded liability provision of the constitution.

The shareholders' contention that *Shuey* survives the *Duke* decision, as to them, would require this court to hold that liability had been created at various times during PAL's existence. This theory was specifically rejected in *Duke.* Liability arose upon insolvency.

222

The decision of the trial court on summary judgment is affirmed.

CALLOW and RILEY, JJ. Pro Tem., concur.

Review denied by Supreme Court June 2, 1987.